TRUE-HIXON LUMBER CO. *v.* MCDONOUGH.

(Division B.   Sept. 30, 1929.)

[122 So. 855.   No. 27982.]

*L. C. Andrews,* of Oxford, for appellant.

*J. W. T. Falkner* and *Jas. Stone & Sons,* all of Oxford, for appellee.

ETHRIDGE, J., delivered the opinion of the court.

William McDonough sued the True-Hixon Lumber Company, a corporation, under a declaration alleging as follows: "On or about the 4th day of November, 1926, one George Martin was indebted to the plaintiff in the sum of five hundred sixty-one dollars and thirty-five cents. On or about said date the defendant, the True-Hixon Lumber Company, a corporation of the state of ———— and doing business in the state of Mississippi, at Oxford, Lafayette county, Mississippi, agreed and promised to pay to the plaintiff the said sum, together with the consent of said George Martin and plaintiff thereupon cancelled said indebtedness against the said George Martin. Although often requested to pay said sum of five hundred sixty-one dollars and thirty-five

cents, the defendant has consistently failed and refused to pay said sum or any part thereof. Wherefore,'' etc.

The defendant filed a plea of the general issue denying that it had ever promised to pay the plaintiff in the manner and form set forth in the declaration, and also a plea of the statute of frauds because the alleged promise was not in writing, or not alleged to be in writing.

The plaintiff in the proof under his declaration showed that, instead of a novation as declared on in the declaration, the said Martin was indebted to him in the sum of something over one thousand one hundred dollars; that Martin became dissatisfied and approached the True-Hixon Lumber Company to sell lumber to it, and as a result of the negotiation between Martin and the True-Hixon Lumber Company an agreement was reached between McDonough and the True-Hixon Lumber Company that the True-Hixon Lumber Company would give its check for five hundred sixty-one dollars in part payment of the said indebtedness and would take over a deed of trust which McDonough had on the sawmill outfit and tractor owned by Martin, and would thereafter buy from Martin such lumber as he sawed, and also buy lumber on the yard of McDonough, and out of the lumber so bought would retain one dollar and fifty cents per thousand on the sale price of the lumber procured from Martin, and after paying the cash advanced, five hundred sixty-one dollars, would thereafter retain one dollar and fifty cents per thousand out of the lumber so purchased and pay McDonough thereon until the Martin debt was paid. McDonough, also as a part of the arrangement, took a second deed of trust on the sawmill outfit and tractor together with a note of Martin, and testified that he did not release Martin from liability. This proof was offered by the plaintiff without objection, and no amendment to the declaration was made to conform to the proof.

The defendant through its manager, Mr. True, testified in opposition to the plaintiff's testimony that he was to

be paid not only the five hundred sixty-one dollars advance, but all other advances that he made to Martin in the operation of the sawmill until he was fully paid, and that thereafter he was to pay McDonough one dollar and fifty cents per thousand for other lumber manufactured by Martin and bought by defendant.

It appears that there was about thirty-six thousand feet of lumber on the yard of McDonough which he had procured from Martin and on which he had advanced Martin nine dollars per thousand. It also appears that there was something around six hundred thousand feet of lumber thereafter sawed by Martin which reached the hands of the True-Hixon Lumber Company. The True-Hixon Lumber Company testified that Martin had never paid its debt; that they consequently had never come into money under the agreement with which to pay the claim of McDonough. In this stage of the proof the parties rested, and the court instructed the jury for the plaintiff as follows:

First, "The court instructs the jury for the plaintiff that nine or more of your number may return a verdict in this case."

Second, "The court instructs the jury for the plaintiff that if you find for the plaintiff the form of your verdict will be, We the jury, find for the plaintiff in the sum of five hundred sixty-one dollars and thirty-five cents."

For the defendant the court gave the following instructions: "The court instructs the jury for the defendant that before you can find for the plaintiff, he must prove by a preponderance of the evidence that defendant promised to pay to plaintiff for Martin the amount sued for in this case, and if plaintiff has not proven this by a preponderance of the evidence, then you must find for defendant."

The defendant requested, and the court refused, the following instruction: "If there was a promise testified to in this case upon the part of the defendant to pay to

plaintiff for Martin the amount sued for, it must be in writing, signed by defendant or some note or memorandum thereof signed by defendant, or by someone thereof lawfully authorized by defendant, and if there is no such writing then your verdict should be for defendant.''

We do not think the statute of frauds (Hemingway's Code 1927, section 3325) plea was good, as it is permissible to substitute by novation one debtor for another, and such is a sufficient consideration by a party agreeing to answer to another for such debt. The evidence developed a case where there was a sufficient consideration passing to uphold the transaction as shown by the testimony, but the proof does not show that the defendant, even on the plaintiff's own testimony, received under the agreement enough lumber to pay the amount advanced and the amount not advanced. The proof wholly fails to support a novation, and the proof also fails to sustain the verdict rendered in the case. The instructions of the court were not applicable to the case as made by the evidence. The defendant, at the close of the plaintiff's case, requested a directed verdict, but did not do so on the ground of variance between the declaration and the proof; and consequently if the verdict could be supported under the proof and under the theory of law given in the instructions, it would be allowed to stand under section 573 of Hemingway's Code of 1927, section 776, Code 1906, but the pleadings were not cured by section 610 of Hemingway's 1927 Code, section 808 of Code of 1906, known as the Statute of Jeofails.

The judgment must be reversed because not supported by the proof, and also because proper instructions applicable to the proof were not submitted to the jury.

*Reversed and remanded.*